IN RE ESTATE OF WILLIAM W. WILSON.

GEORGE E. HIBNER, ADMINISTRATOR, APPELLEE, V. JAY
SAUM ET AL. APPELLANTS.

FILED FEBRUARY 26, 1910.   No. 16,390.

Executors and Administrators: COMPENSATION.   Evidence examined
and referred to in the opinion *held* sufficient to sustain the judg-
ment of the district court.

APPEAL from the district court for Lancaster county:
ALBERT J. CORNISH, JUDGE.   *Affirmed.*

*Robert Ryan* and *R. S. Mockett,* for appellants.

*Tibbets & Anderson, contra.*

FAWCETT, J.

This is an appeal by the heirs of William W. Wilson,
deceased, from the judgment of the district court for
Lancaster county in favor of appellee George E. Hibner
for his services as administrator of said estate.   The case
is before us for the second time.   For our former opinion
see *In re Estate of Wilson,* 83 Neb. 252.

No formal assignment of errors has been filed in this
court, nor does the brief of appellants contain any such
assignment and discussion of error on the part of the
court in finding the amount due appellee as to really
warrant a consideration of that question.   It is suggested
in the brief that but one lawyer, other than Mr. Hibner
himself, was sworn as to the value of appellee's serv-

ices, and that he fixed the value at from $2,400 to "$2,600." While this is true, it is an inaccurate statement of the situation. This case originated in the county court. That court, in fixing the amount of appellee's compensation, allowed him "in full for his services as special and general administrator for the care and labor incident to the caring for said estate, and for all time and labor in regard to any questions and actions that arose in said estate, including any unusual and extraordinary services rendered said estate, the sum of $2,000; this being in full for all services of the said administrator of every nature and kind whatsoever in the matter of said estate." It will be seen from this that the claim of appellee is not only for his extra and unusual services, but also for his regular services, both as special and general administrator.

On the trial in the district court the testimony of the witness above referred to fixed the value of appellant's services at from $2,400 to $2,800 (not $2,600 as stated by appellees). The answer of the witness was given in response to a question covering nearly two pages of the record, in which were recited the services rendered by the administrator, who is a lawyer, outside of the regular and usual duties performed by an administrator, and the witness in answering the question expressly limited his testimony thereto in the following language: "In answering the question I would confine myself to what I would regard as the value of legal services if rendered by a lawyer outside of the administrator himself, and take into account the magnitude of the estate, and the questions that naturally come up, and the responsibility which is naturally assumed, and I would say, under the modified question, not less than 3 to 3½ per cent. of the value of the estate. Q. (By Mr. Ryan) That is the entire value of the estate—do you mean the entire value of the estate, the real property and all, or what he collected? A. I put it the entire value of the estate. Q. And what would you place it in figures? A.

Well, I do not think you mentioned the value of the estate. Q. $80,000. A. Then I would say from $2,400 to $2,800." The witness having fixed the value of the extra services performed by the 'administrator at from $2,400 to $2,800, and the court having before it the proceedings in the county court, and having knowledge of the fact that a large estate had been administered by appellee, the services covering a period of a number of years, was well qualified to fix the value of appellee's services for his regular duties as administrator. This the court did, and combined both in the following finding: "And the court, on due consideration, being fully advised in the premises, finds generally in favor of the appellant George E. Hibner, and that there should be allowed him for all services rendered as general and special administrator the sum of $3,500." No evidence was offered by the heirs on the question of the value of the administrator's services, and we therefore accept the findings of the district court on that question.

The main point discussed in the brief of appellants, and the one upon which they chiefly rely, is that "there was developed on the trial of this case so gross a violation of his duties by the administrator that he should not be allowed anything—not even the compensation provided by statute." The record discloses that Mr. Wilson left an estate consisting of real and personal property of the value of about $80,000. He left no wife or children surviving. He died intestate, his estate descending to a number of collateral heirs, most of whom were of full age. At the time of the funeral of Mr. Wilson, a man by the name of Evans appeared upon the scene, and asserted that he was an illegitimate son of the deceased, and it would appear from the evidence that he had threatened to institute proceedings to establish his right of inheritance to the entire estate. It does not appear that he was in possession of any proofs such as would enable him to establish that claim, but, regardless

15

of that fact, the heirs who were of full age were desirous of avoiding the scandal which would result from such a contest, and were willing to pay Evans something to avoid any such undesirable attempt on his part. Appellee made a trip to Richland, Iowa, to see Evans, and made an agreement with him that he, Evans, would pay appellee 25 per cent. of whatever sum was obtained from the heirs in settlement of his pretended claim. Appellee then took the matter up with the heirs who were of full age, and made an agreement with them that they would each pay their proportion of $4,500 to obtain a settlement with Evans. It seems that the heirs were all poor people, and were unable to advance the money to make this settlement. Thereupon appellee agreed to advance to each one, from his or her respective distributive share of the estate, their proportions of this $4,500. In accordance with this arrangement appellee took from each of the adult heirs a receipt for his or her proportion of said sum, charging them with the amounts as a portion of their distributive shares of the estate, and taking credit himself on his account as administrator. Appellee did not advise any of the heirs who contributed portions of this amount of the fact that he was to receive a fourth of said sum. He justifies his conduct by contending that as to that matter he was not acting in his capacity as administrator; that it was a matter with which the estate had no concern; that it did not tend to either increase or diminish the estate; that he did not submit the matter to the court for the reason that it was a matter with which the court had no concern. In other words, that it was purely a personal matter between himself and the adult heirs and Evans. It is contended by appellants that this was misconduct on his part which amounted to a gross violation of his duties as an administrator, and for that reason he should not be allowed anything for his services. While we cannot commend the conduct of appellee in that transaction, we are unable to concur in the contention of appellants. We

In re Estate of Wilson.

think the action of appellants in paying the amount of money stated, for the purpose of avoiding a scandal and disgracing the memory of the deceased, from whom they were receiving a handsome estate, was commendable, and if appellee had fully advised them of his interest in the transaction, his part therein would have been equally commendable. A careful consideration of the whole transaction, however, has convinced us that we cannot give appellants any relief in this case. A suggestion has been made that we might, perhaps, require appellee to remit from the judgment his 25 per cent. of the $4,500, but that cannot be done in this case for the reason that the minor heirs of Mr. Wilson did not contribute any portion of the money, and if we were now to order a remittitur from appellee's judgment, the heirs who contributed no portion of the fund would receive money to which they are not entitled, at the expense of the adult heirs who contributed the entire amount. It would seem, therefore, that if the adult heirs are entitled to a return of the fund which they contributed to settle with Evans, the right thereto would have to be asserted in an independent action, and cannot be determined here.

Upon a consideration of the whole case, we feel constrained to affirm the judgment of the district court, which is done.

AFFIRMED.

SEDGWICK, J., not having heard the arguments, took no part in the decision.

REESE, C. J., dissenting.

I cannot agree to the opinion in this case. This is an appeal from the final settlement of the administrator. I think appellee should be required to refund to those who contributed the portion of the $4,500, which he retained from the settlement with Evans. It will not do to refuse relief in such cases, and it can as well be given here as in an independent suit. In his settlement with Evans he

represented the estate as administrator. This was a species of agency. Can he profit by the secret arrangement he made by which he compromised the Evans claim? He could have settled with Evans for $3,375, but instead of doing so he settled for $4,500, and retains $1,125 to his own use, and represents to the heirs that he actually paid $4,500. I cannot approve such a transaction, and he should not be allowed that sum in his final settlement.

ROSE, J., concurs in this dissent.